IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **AUSTIN VANDIVER** | § | |
| *Plaintiff*, | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 4:20-cv-2324** |
| | § | |
| **MARK JENKINS,** | § | |
| **In his individual capacity, and** | § | |
| **JAMES REYNOLDS,** | § | |
| **In his individual capacity,** | § | |
| *Defendants*. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE:**

COMES NOW, AUSTIN VANDIVER, Plaintiff, complaining of MARK JENKINS, in his individual capacity, and JAMES REYNOLDS, in his individual capacity, and for cause of action will respectfully show unto the Court as follows:

### I.
### PARTIES

1.      Plaintiff Austin Vandiver is a resident of Royse City, Rockwall County, Texas.

2.      Defendant Detective Mark Jenkins, Badge Number 254, is an individual residing in Huntsville, Walker County, Texas and is a police officer with the Huntsville Police Department and may be served at his place of employment at the Huntsville Police Department located at 1220 11th Street, Huntsville, Texas 77340 or wherever he may be found. Defendant Jenkins is being sued in his individual capacity.

3.      Defendant Officer James Reynolds, Badge Number 298, is an individual residing in Huntsville, Walker County, Texas and is a police officer with the Huntsville Police Department and may be served at his place of employment at the Huntsville Police

Department located at 1220 11th Street, Huntsville, Texas 77340 or wherever he may be found.  Defendant Reynolds is being sued in his individual capacity.

## II.
## JURISDICTION AND VENUE

4.      The Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 1343 since Plaintiff is suing for relief under 42 U.S.C. § 1983.

5.      Venue is proper in the Southern District of Texas pursuant to 28 U.S.C. § 1391 because the Defendants are domiciled and/or reside in the Southern District of Texas, and all or a substantial part of the cause of action accrued in the Southern District.

## III.
## FACTS AND ALLEGATIONS

6.      On October 20, 2018, Plaintiff Austin Vandiver was in Huntsville to help coach a rugby match for his university.

7.      Mr. Vandiver was a Student Coach for the Angelo State University rugby team where he attended school.

8.      They were in Huntsville to play the rugby team for Sam Houston State University.

9.      At the time, Mr. Vandiver was 5 feet 10 inches tall and weighed 160 pounds.

10.     After the game, the Sam Houston State University rugby team took the Angelo State team out to a local bar they frequent in Huntsville called the Jolly Fox Club.

11.     Around 1:00 a.m. on October 21, 2018, Mr. Vandiver was dancing with a woman on the dance floor of the Jolly Fox Club.

12.     As the pair were dancing, two bouncers from the Jolly Fox Club approached Mr. Vandiver.

13.     One bouncer told Mr. Vandiver that it was "time to go."

14.     Mr. Vandiver was confused as to why he was being told to leave by the bouncers since he had done nothing wrong.

15.     Mr. Vandiver, believing this to be a mistake, told the bouncers that he did not need to leave.

16.     The bouncers grabbed Mr. Vandiver and threw him onto the ground.

17.     Mr. Vandiver was not injured but was confused at why he was thrown to the ground.

18.     Mr. Vandiver remained on the ground as he was told.

19.     Mr. Vandiver's friend, Kevin Reid, was also at the bar.

20.     Mr. Reid was the sober driver that night and had not been drinking alcohol.

21.     Mr. Reid was only a couple of feet from Mr. Vandiver when the bouncers pulled Mr. Vandiver from the dance floor.

22.     When the bouncers grabbed Mr. Vandiver, Mr. Reid walked over to where they were holding him on the ground.

23.     One of the bouncers walked away and then returned with two uniformed Huntsville Police Officers.

24.     These two officers were Defendants Mark Jenkins and James Reynolds.

25.     Defendants Jenkins and Reynolds each grabbed Mr. Vandiver by an arm and picked Mr. Vandiver off the ground.

26.     Mr. Vandiver did not pull, fight, attempt to get away, or resist in any way when Defendants Jenkins and Reynolds picked him off the ground.

27.     Mr. Vandiver was not disobeying orders or being non-compliant with Defendants Jenkins and Reynolds.

28.     Defendants Jenkins and Reynolds were holding Mr. Vandiver in the air so that his feet were not touching the ground.

29.     Defendants Jenkins and Reynolds carried Mr. Vandiver out of the bar.

30.     Mr. Reid followed directly behind Defendants Jenkins and Reynolds as they took Mr. Vandiver outside through the back or side door.

31.     Mr. Vandiver did not try to pull away or fight Defendants Jenkins and Reynolds as they were taking him out of the bar.

32.     Mr. Vandiver did not threaten any person or officer, including Defendants Jenkins and Reynolds, as they were taking him out of the bar.

33.     Mr. Vandiver did not attempt to flee or resist Defendants Jenkins and Reynolds as they were taking him out of the bar.

34.     Once outside of the bar, and without saying anything to Mr. Vandiver, Defendants Jenkins and Reynolds slammed him face first onto the ground.

35.     Neither Defendant gave Mr. Vandiver an order before slamming him to the ground.

36.     As a result, Mr. Vandiver did not disobey or fail to comply with any orders from Defendant Jenkins or Defendant Reynolds.

37.     Defendants Jenkins and Reynolds immediately escalated their use of force without first attempting to negotiate with Mr. Vandiver.

38.     However, there was no reason to negotiate with Mr. Vandiver as he was fully compliant with Defendants Jenkins and Reynolds the entire time.

39.     It was completely unnecessary to slam Mr. Vandiver to the ground.

40.     Had Defendants Jenkins and Reynolds given Mr. Vandiver any orders, he would have followed them without question, as they were uniformed police officers.

41.     Instead, Defendants Jenkins and Reynolds slammed Mr. Vandiver to the ground without warning.

42.     Mr. Vandiver had not threatened anyone and was not a threat to any person or officer when Defendants Jenkins and Reynolds slammed him to the ground without warning.

43.     Mr. Vandiver was not armed with a weapon and had given Defendants Jenkins and Reynolds no reason to believe he was armed in any way.

44.     Mr. Vandiver was not suspected of committing a serious or violent crime at the time Defendants Jenkins and Reynolds slammed him to the ground without warning.

45.     Mr. Vandiver had not attempted to flee from Defendants Jenkins or Reynolds prior to them slamming him to the ground without warning.

46.     Mr. Vandiver had not attempted to resist Defendants Jenkins or Reynolds prior to them slamming him to the ground without warning.

47.     Defendants Jenkins and Reynolds placed Mr. Vandiver into handcuffs with his arms behind his back while he was on the ground.

48.     Defendants Jenkins and Reynolds tightened the handcuffs on Mr. Vandiver's wrists to the point of his wrists went numb.

49.     The handcuffs were tightened by Defendants Jenkins and Reynolds to a point that was unreasonable, unnecessary, and the only purpose could have been to cause pain.

50.     Because of the excessively tight handcuffs on his wrists, Mr. Vandiver was diagnosed with neuropathy.

51.     Mr. Reid was standing behind Mr. Vandiver and witnessed the entire sequence of events when Defendants Jenkins and Reynolds slammed Mr. Vandiver to the ground outside of the bar.

52.     Mr. Reid was shocked at what happened because Mr. Vandiver had done nothing to warrant being slammed on the ground by the two officers.

53.     Defendants Jenkins and Reynolds were screaming "stop resisting."

54.     However, at no point did Mr. Vandiver resist.

55.     Mr. Vandiver was merely lying on the ground motionless.

56.     Mr. Vandiver complied with all orders given to him by officers.

57.     Defendant Jenkins and Defendant Reynolds used unnecessary and excessive force on Mr. Vandiver, causing physical injuries.

58.     Mr. Vandiver was bleeding from his face after being slammed to the ground by Defendant Jenkins and Defendant Reynolds.

59.     Mr. Vandiver's jacket was covered in the blood from his face.



60.     When Defendant Jenkins and Defendant Reynolds slammed Mr. Vandiver onto the ground, they broke Mr. Vandiver's nose.



61.     Defendant Jenkins and Defendant Reynolds injured the side of Mr. Vandiver's head when they slammed him to the ground.



62.     According to the police report written by Officer Marshall Douglas, Defendant Jenkins told him that Mr. Vandiver was "seen fighting patrons on the dance floor and creating a disturbance."

63.     This statement is and was untrue, and Defendant Jenkins knew it was untrue at the time it was written in the official police report.

64.     Officer Douglas also wrote in his report that Defendant Jenkins told him that "he confronted Vandiver and he was instantly resistant."

65.     This statement is and was untrue, and Defendant Jenkins knew it was untrue at the time it was written in the official police report.

66.     Mr. Reid witnessed the entire interaction between Defendants Jenkins and Reynolds and Mr. Vandiver.

67.     When Defendant Jenkins first contacted Mr. Vandiver, Mr. Vandiver was on the ground.

68.     Mr. Vandiver did not resist Defendant Jenkins or Defendant Reynolds at any point.

69.     After officers finally picked up Mr. Vandiver from the pavement, they put him into Officer Douglas' car to be transported to the Walker County Jail.

70.     Mr. Vandiver was taken by Officer Douglass to the Walker County Jail where he was charged with public intoxication.

71.     Mr. Vandiver was not charged with resisting arrest because at no time did he resist the officers.

72.     When Mr. Vandiver arrived at the police station, he had blood running down his face from when his head and face were smashed into the pavement.

73.     As a result of his head being slammed onto the pavement, he received a gash on the right side of his head.

74.     Mr. Vandiver was not given medical attention at the Walker County Jail for the gash on his face.

75.     Mr. Vandiver was released from jail the following day and drove back to San Angelo, Texas.

76.     Mr. Vandiver immediately drove to the Shannon Medical Center in San Angelo to seek medical attention.

77.     Doctors at Shannon Medical Center took two CT scans of Mr. Vandiver's head.

78.     Doctors confirmed that Mr. Vandiver had a concussion.

79.     Defendants Jenkins and Reynolds caused the concussion when they slammed Mr. Vandiver to the ground.

80.     Doctors also confirmed that Mr. Vandiver had a fractured nose and a ligament injury in his shoulder.

81.     Defendants Jenkins and Reynolds caused the fractured nose and ligament injury in his shoulder when they slammed Mr. Vandiver to the ground.

82.     Unsurprisingly, Defendant Jenkins has disciplinary history related to an excessive force complaint from prior to assaulting Mr. Vandiver.

83.     During an incident in September of 2011, Defendant Jenkins arrested a patron for public intoxication outside of the same Jolly Fox Club and used excessive force on the patron he arrested.

84.     An investigation into the 2011 excessive force complaint resulted in Defendant Jenkins being suspended without pay for a period of twenty-four work hours and having his probation period extended an extra three months.

85.     The Defendants were at all times acting under the color of law.

### IV.
### CAUSES OF ACTION

**Count One**
**Excessive Force – Defendant Jenkins**
**(Fourth Amendment pursuant to 42 U.S.C. § 1983)**

86.     Mr. Vandiver repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

87.     Acting under the color of law, Defendant Jenkins deprived Mr. Vandiver of the rights and privileges secured to him by the Fourth and Fourteenth Amendments to the United States Constitution and by other laws of the United States to be free from illegal and unreasonable seizures by the use of force.

88.     Mr. Vandiver brings this cause of action pursuant to 42 U.S.C. § 1983.

89.     The amount of force used by Defendant Jenkins against Mr. Vandiver as described above, specifically but not limited to, when Defendant Jenkins slammed Mr. Vandiver to the ground, was objectively unreasonable under the circumstances and inflicted unnecessary injury, pain, and suffering upon Plaintiff.

90.     A seizure is unreasonable if it results in (a) an injury, (b) that resulted directly and only from a use of force that was clearly excessive, and (c) the excessiveness was clearly unreasonable.

91.     It is clearly established that officers cannot immediately resort to the use of force without attempting to use physical skill, negotiation, or even commands. *Newman*

*v. Guedry,* 703 F.3d 757, 763 (5th Cir. 2012); *Deville v. Marcantel*, 567 F.3d 156, 168 (5th Cir. 2009).

92.     Officers must assess "the relationship between the need and the amount of force used." *Newman*, 703 F.3d at 763 (quoting *Deville*, 567 F.3d at 167).

93.     A constitutional violation occurs when an officer tases, strikes, or violently slams an arrestee who is not actively resisting arrest. *Darden v. City of Fort Worth, Texas*, 880 F.3d 722, 731 (5th Cir.), *cert. denied sub nom. City of Fort Worth, Tex. v. Darden*, 139 S. Ct. 69, 202 L. Ed. 2d 23 (2018).

94.     Fifth Circuit case law makes clear that when an arrestee is not actively resisting arrest the degree of force an officer can employ is reduced. *Darden*, 880 F.3d at 731.

95.     In this case, Mr. Vandiver was not resisting arrest in any way.

96.     Mr. Vandiver was not suspected of committing a felony offense when Defendant Jenkins slammed Mr. Vandiver to the ground.

97.     Mr. Vandiver was not attempting to flee when Defendant Jenkins slammed Mr. Vandiver to the ground.

98.     Mr. Vandiver was not threatening any officer or other person immediately prior to when Defendant Jenkins slammed Mr. Vandiver to the ground.

99.     Mr. Vandiver was not resisting arrest prior to when Defendant Jenkins slammed Mr. Vandiver to the ground.

100.     Defendant Jenkins escalated to the use of force although Mr. Vandiver had not resisted.

101.     A reasonable officer would know that the use of force is <u>clearly excessive</u> when engaging with citizens such as Mr. Vandiver, who was not threatening any officer

or other person, was only suspected of committing the misdemeanor crime of public intoxication, was not attempting to flee, was not resisting arrest, was not being non-compliant, and who the use of force was not warranted.

102.    A reasonable officer would know that the use of force is <u>clearly unreasonable</u> when engaging with citizens such as Mr. Vandiver, who was not threatening any officer or other person, was only suspected of committing the misdemeanor crime of public intoxication, was not attempting to flee, was not resisting arrest, was not being non-compliant, and who the use of force was not warranted.

103.    A reasonable officer in Defendant Jenkins's shoes would know that slamming someone to the ground, when that person was not threatening any officer or other person, was only suspected of committing the misdemeanor crime of public intoxication, was not attempting to flee, was not resisting arrest, and was not being non-compliant is clearly unreasonable and excessive.

104.    As a direct result of the force used against him by Defendant Jenkins, Mr. Vandiver has suffered physical injury, pain and suffering, and mental anguish for which he sues herein.

105.    These injuries were not caused by any other means.

**Count Two**
**Excessive Force – Defendant Reynolds**
**(Fourth Amendment and 42 U.S.C. § 1983)**

106.    Mr. Vandiver repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

107.    Acting under the color of law, Defendant Reynolds deprived Mr. Vandiver of the rights and privileges secured to him by the Fourth and Fourteenth Amendments to

the United States Constitution and by other laws of the United States to be free from illegal and unreasonable seizures by the use of force.

108.    Mr. Vandiver brings this cause of action pursuant to 42 U.S.C. § 1983.

109.    The amount of force used by Defendant Reynolds against Mr. Vandiver as described above, specifically but not limited to, when Defendant Reynolds slammed Mr. Vandiver to the ground, was objectively unreasonable under the circumstances and inflicted unnecessary injury, pain, and suffering upon Plaintiff.

110.    A seizure is unreasonable if it results in (a) an injury, (b) that resulted directly and only from a use of force that was clearly excessive, and (c) the excessiveness was clearly unreasonable.

111.    It is clearly established that officers cannot immediately resort to the use of force without attempting to use physical skill, negotiation, or even commands. *Newman,* 703 F.3d at 763; *Deville*, 567 F.3d at 168.

112.    Officers must assess "the relationship between the need and the amount of force used." *Newman*, 703 F.3d at 763 (quoting *Deville*, 567 F.3d at 167).

113.    A constitutional violation occurs when an officer tases, strikes, or violently slams an arrestee who is not actively resisting arrest. *Darden*, 880 F.3d at 731.

114.    Fifth Circuit case law makes clear that when an arrestee is not actively resisting arrest the degree of force an officer can employ is reduced. *Darden*, 880 F.3d at 731.

115.    In this case, Mr. Vandiver was not resisting arrest in any way.

116.    Mr. Vandiver was not suspected of committing a felony offense when Defendant Reynolds slammed Mr. Vandiver to the ground.

117.    Mr. Vandiver was not attempting to flee when Defendant Reynolds slammed Mr. Vandiver to the ground.

118.    Mr. Vandiver was not threatening any officer or other person immediately prior to when Defendant Reynolds slammed Mr. Vandiver to the ground.

119.    Mr. Vandiver was not resisting arrest prior to when Defendant Reynolds slammed Mr. Vandiver to the ground.

120.    Defendant Reynolds escalated to the use of force although Mr. Vandiver had not resisted.

121.    A reasonable officer would know that the use of force is <u>clearly excessive</u> when engaging with citizens such as Mr. Vandiver, who was not threatening any officer or other person, was only suspected of committing the misdemeanor crime of public intoxication, was not attempting to flee, was not resisting arrest, was not being non-compliant, and who the use of force was not warranted.

122.    A reasonable officer would know that the use of force is <u>clearly unreasonable</u> when engaging with citizens such as Mr. Vandiver, who was not threatening any officer or other person, was only suspected of committing the misdemeanor crime of public intoxication, was not attempting to flee, was not resisting arrest, was not being non-compliant, and who the use of force was not warranted.

123.    A reasonable officer in Defendant Reynolds' shoes would know that slamming someone to the ground, when that person was not threatening any officer or other person, was only suspected of committing the misdemeanor crime of public intoxication, was not attempting to flee, was not resisting arrest, and was not being non-compliant is clearly unreasonable and excessive.

124.    As a direct result of the force used against him by Defendant Reynolds, Mr. Vandiver has suffered physical injury, pain and suffering, and mental anguish for which he sues herein.

125.    These injuries were not caused by any other means.

## V.
## PUNITIVE DAMAGES

126.    Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

127.    When viewed objectively from the standpoint of the Defendants, at the time of the occurrence, said Defendants' conduct involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others.

128.    As a direct, proximate, and producing cause and the intentional, egregious, malicious conduct by the Defendants, Plaintiff is entitled to recover exemplary damages in an amount within the jurisdictional limits of this Court.

## VI.
## DAMAGES

129.    Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

130.    Plaintiff's injuries were a foreseeable event.

131.    Those injuries were directly and proximately caused by Defendants' use of excessive and unreasonable force against Plaintiff.

132.    As a result, Plaintiff is entitled to recover all actual damages allowed by law.

133.    Plaintiff contends the Defendants' conduct constitutes malice, evil intent, or reckless or callous indifference to Plaintiff's constitutionally protected rights. Thus, Plaintiff is entitled to punitive damages.

134.    As a direct and proximate result of the occurrence which made the basis of this lawsuit, Plaintiff was forced to suffer:

     a.  Physical injuries;

     b.  Physical pain and suffering in the past;

     c.  Emotional distress, torment, and mental anguish in the past; and

     d.  Medical Expenses.

135.    Pursuant to 42 U.S.C. § 1983 and § 1988, Plaintiff seeks to recover, and hereby requests the award of punitive damages, reasonable attorney's fees, and costs of court.

## VII.
## ATTORNEY'S FEES

136.    If Plaintiff prevails in this action, by settlement or otherwise, Plaintiff is entitled to and hereby demands attorney's fees under 42 U.S.C. § 1988.

## VIII.
## JURY REQUEST

137.    Plaintiff respectfully requests a jury trial.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that judgment be rendered against Defendants, for an amount in excess of the jurisdictional minimum of this Court. Plaintiff further prays for all other relief, both legal and equitable, to which he may show himself justly entitled.

Respectfully submitted,

*/s/ Scott H. Palmer*
SCOTT H. PALMER
Texas Bar No. 00797196
JAMES P. ROBERTS
Texas Bar No. 24105721

SCOTT H. PALMER, P.C.
15455 Dallas Parkway,
Suite 540, LB 32
Dallas, Texas 75001
Tel: (214) 987-4100
Fax: (214) 922-9900
scott@scottpalmerlaw.com
james@scottpalmerlaw.com

ATTORNEYS FOR PLAINTIFF